UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

CIVIL ACTION NO. 07-13-GWU

CHARLES D. MAYS,                                                       PLAINTIFF,

VS.                     **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520©), 404.1521, 416.920©), 461.921.

1

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

07-13 Mays

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

07-13  Mays

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley  v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Charles D. Mays, a 51-year-old individual with a high school education and work experience as a maintenance supervisor, groundskeeper and machine repairer, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of coronary artery disease status post coronary artery bypass graft X 3 in 1998 with followup coronary artery bypass graft X 2 in 2005, hypertension, a possible transient ischemic attack, gout/arthritis in the feet, and anxiety and depression.  (Tr. 15).  Nevertheless, based on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Mays retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 16-21).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of Mr. Mays's age, education, and work experience could perform any jobs if he were

capable of "light" level exertion and also had the following non-exertional impairments. (Tr. 375).[1] He: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally climb ramps or stairs; (3) could not perform aerobic activities including running, jumping, or working on fast-paced assembly lines; (4) could not work with his hands overhead; (5) needed to avoid exposure to concentrated dust, gases, and fumes and avoid temperature extremes and excess humidity; and (6) required simple, repetitive work with no frequent changes in work routines, no requirement for problem solving, and no independent planning. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 376).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Mays alleged disability beginning November 1, 2004 due to heart problems, which had resulted in fatigue and shortness of breath. (Tr. 61-2). He testified that he had returned to work after having a coronary bypass in 1998, but

---

[1] The ALJ limited the plaintiff to sitting two hours in an eight-hour day in his decision (Tr. 16) but no sitting restriction was given in the hypothetical question (Tr. 375). Given the basis for the ALJ's decision, the restriction to two hours sitting was presumably a typographical error.

began having more chest pain and had stopped working after a repeat cardiac catheterization in November, 2004 showed a reocclusion. (Tr. 356, 358). In January, 2005, he had been required to have more bypass surgery. (Tr. 359). At the time of the administrative hearing in March, 2006, he stated that he still had chest pain when he tried to exert himself or stood or sat too long. (Tr. 360). He had stopped using nitroglycerin for chest pains because of the side effects, which included severe headaches. (Id.). He had previously owned 30 acres on which he took care of some cattle, but had stopped this activity after November, 2004, and had since sold the property. (Tr. 358). Mr. Mays did state that he was able to engage in some activities, such as driving his children to the school bus and using a riding lawn mower. (Tr. 362). He was taking Zoloft for depression, which he found helpful. (Tr. 368-70).

Initially, the court notes that the only evidence regarding mental restrictions comes from the plaintiff's treating family physician, Dr. Hanan Budeiri, who prepared a medical report dated July 26, 2005 which included a diagnosis of anxiety and depression, for which he had prescribed Zoloft (Tr. 302-3), and a statement that Mr. Mays had poor or no ability to deal with work stresses (Tr. 305). No other medical source, whether examining or non-examining, offered an opinion. As a treating source, Dr. Budeiri's opinion is entitled to great weight in any case, and particularly where it is uncontradicted. See, e.g., Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.

07-13 Mays

1985). The ALJ did not specifically mention the treating physician's opinion in his decision, and the only evidence to the contrary he cited in finding fewer restrictions was the plaintiff's ability to drive, operate a lawn mower, and perform minor household tasks, such as dishwashing. (Tr. 19). The ability to perform minor activities of day-to-day living is less than convincing evidence to overcome the uncontradicted opinion of a treating physician. Accordingly, a remand will be required for further evidentiary development on this issue.[2]

Regarding the physical factors, the ALJ adopted the opinion of non-examining state agency physicians John Rawlings and James Ramsey. (Tr. 268-75, 325-32). Neither of these physicians commented on restrictions given by Dr. Glenn Morris, the plaintiff's treating cardiologist, to the effect that he would be limited to lifting no more than five pounds occasionally, standing two hours in an eight-hour day, sitting two hours in an eight-hour day, occasionally lifting either arm above shoulder level, and having a frequent need to elevate his legs during an eight-hour day. (Tr. 277). Dr. Budeiri also provided generally consistent exertional restrictions, in addition to specifying non-exertional limitations. (Tr. 303-4). While the opinion of a non-examining source may be accepted over that of an examiner, the non-examiner

---

[2] The ALJ did provide the VE with an alternative hypothetical question which included the treating physician's restriction on stress, but the hypothetical also included a physical restriction to less than full-time sitting or standing, which the VE noted would preclude work activity. (Tr. 378). The VE did not address the effect of the psychological restriction with the physical restrictions in the first hypothetical question.

10

must have had the opportunity to review all of the evidence and give specific reasons for his disagreement.  Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).  Clearly, that was not the case here.

Dr. Morris cited specific reasons for his opinion, including anginal pain, a "positive exercise tolerance test," a decreased ejection fraction of 45 percent, and weakness and fatigue due to the plaintiff's cardiac condition.  (Tr. 277).  The ALJ discounted Dr. Morris's opinion on several grounds, at least some of which appear to be dubious.  For instance, he noted that there was some evidence of the plaintiff "chasing calves" (Tr. 19), but the evidence indicates that this activity took place at or before the alleged onset date (Tr. 217, 295), as the plaintiff testified (Tr. 358).  The ALJ also noted that Dr. Morris cited frequent episodes of chest pain for which Mr. Mays used sublingual nitroglycerin (Tr. 277), in contrast to the plaintiff's testimony that he had not used nitroglycerin in nine months as of March, 2006 (Tr. 360).  The cardiologist's opinion had been given in July, 2005, however, and Mr. Mays testified that he had stopped using nitroglycerin subsequently due to the side effects, as previously noted.  (Id.).  While the ALJ stated at the hearing that he himself frequently used nitroglycerin without headaches (Tr. 360-1), headaches are listed as a frequent side effect of nitroglycerin, occurring as much as 50 percent of the time in some studies.  Physicians' Desk Reference, (Neil Chesanow & Harris

Fleming, eds., 2006), p. 1162.[3]  Therefore, there was not necessarily any inconsistency between the comments of Dr. Morris and the plaintiff's recent lack of nitroglycerin use.

The state agency physicians upon whom the ALJ relied also indicated that they felt there was a durational issue, with Mr. Mays expected to improve within 12 months, but a recent office note from Dr. Budeiri dated February 8, 2006, more than one year after the most recent bypass, still states that the plaintiff was unable to exert or perform any exertional work.  (Tr. 343).

Finally, while the ALJ cited a May 5, 2005 notation by Dr. Morris that the plaintiff was doing well following his surgery, the statement read in context appears to be significantly qualified.  The same office note says that the plaintiff was having "a lot of chest discomfort," and that the physician's opinion was that with his post-operative changes and his significant obstructive disease, the bypass "was not going to get rid of his chest pain." (Tr. 278).  The same office note also gives the plaintiff's functional classification as being "II/III." (Id.).  Class II cardiac disease encompasses individuals who are comfortable at rest in the performance of light daily activities, whereas Class III cardiac disease results in marked limitation of physical activity; although the individual is comfortable at rest, "ordinary physical activity results in

---

[3] There is also evidence from a physician's assistant in February, 2006, that Mr. Mays should not take nitroglycerin due to a drug interaction problem with Viagra.  (Tr. 339).

07-13 Mays

fatigue, palpitation, dyspnea, or anginal pain." American Medical Association, <u>Guides to the Evaluation of Permanent Impairment</u> (Fifth Ed. 2001), p. 26. A functional classification between these two categories would appear to suggest greater limitations than found by the ALJ, at the very least.

The decision will be remanded for further consideration.

This the 30th day of November, 2007.

Signed By:

<u>G. Wix Unthank</u>

United States Senior Judge